# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HILTON KARRIEM MINCY,** | : | CIVIL ACTION NO. 1:08-CV-0066 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **SUPERINTENDENT EDWARD KLEM**, et al., | : | |
| Defendants | : | |

## **MEMORANDUM**

Plaintiff Hilton Karriem Mincy ("Mincy"), a state inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), formerly housed at the State Correctional Institution at Mahanoy ("SCI-Mahanoy"), Frackville, Pennsylvania, commenced this civil rights action on January 10, 2008, alleging that he was retaliated against when he was moved to another cell in the Restricted Housing Unit ("RHU") and "was 'set-up' by corrections officers to be attacked by another inmate just 3-4 days after having testified against corrections officers employed at S.C.I. Mahanoy in it's [sic] Restricted Housing Unit." (Doc. 1, ¶¶ 1-3.) Presently ripe for disposition are cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 49, 54.) For the reasons set forth below, Mincy's motion will be denied and defendants' motion will be granted.[1]

---

[1] On February 9, 2009, the court issued a Memorandum and Order granting the motion to dismiss filed on behalf of defendants Straub, Clements and Mumma. (Doc. 15.)

## I.  Statement of Facts

At all times material to the complaint, Mincy, a Security Level 5 inmate, was incarcerated at SCI-Mahanoy.  (Doc. 61, ¶ 1.)  DOC Administrative policy ("DC-ADM") 6.5.1 provides that each Security Level 5 inmate shall be assigned to a new cell every ninety days.  (Doc. 50, ¶ 45; Doc. 50, ¶ 45; Doc. 61, ¶ 2; Doc. 69, ¶ 2.)  Mincy contends that he was not consistently moved in accordance with this policy and that he repeatedly wrote and reminded defendants to move him after the ninety-day period expired.  (Doc. 50, ¶¶ 46, 48.)

According to DOC records, on July 28, 2005, Mincy was moved from RHU HA Pod, Cell #1 to HD Pod, Cell #5, and remained in that cell for a period of approximately five months through January 3, 2006.  (Doc. 50, ¶ 1, Doc. 58, ¶ 1.)  This was the only occasion—prior to the January 3, 2006 incident—that Mincy occupied the same RHU cell more than ninety days.  (Doc. 58, ¶ 46.)  There were also two post-incident cell assignments longer than ninety days.  On January 17, 2006, Mincy was placed in Building H, Section C, Cell 2022 (an RHU cell), where he remained until May 10, 2006 (114 days).  (Id. at ¶ 48.)  On May 10, 2006, he was moved to another RHU cell at Building H, Section C, Cell 2018, and remained there until August 15, 2006 (97 days), at which time he was moved to a non-RHU cell.  (Id.)

On December 30, 2005, Mincy gave deposition testimony and officers employed at SCI-Mahanoy, including Officer Kmieciak, were present at the deposition.  (Doc. 50, ¶ 5; Doc. 58, ¶ 5.)  None of the named defendants was present.  (Doc. 61, ¶ 16; Doc. 69, ¶ 16.)  Mincy provided this testimony in connection with

2

Middle District of Pennsylvania Civil No. 1:05-CV-1458, Mincy v. Klem, a case in which Klem, Kane and Bitner are also named as defendants. (Doc. 50, ¶ 3; Doc. 58, ¶ 2; Doc. 61, ¶ 7;Doc. 69, ¶ 7.) At the same time, Mincy was pursuing relief in Middle District of Pennsylvania Civil No. 1:05-CV-0292, which action also included Klem, Derfler, Kane and Bitner as named defendants. (Doc. 58, ¶ 2.) Mincy's deposition testimony covered the following incidents:

> While Plaintiff did refer to Michael Kmieciak (who is not a Defendant in the instant case) during his deposition for #1:05-cv-1458, the only thing he said about Kmieciak is that he may have spoken to Kmieciak about pebbles being found in his food on one occasion. He did not testify that Kmieciak did anything wrong. Plaintiff also testified that he may have spoken to Defendant Wetzel about the pebbles. In addition, Plaintiff referred to another case and related grievances in which he had alleged Wetzel witnessed Corrections Officer Vance (not a Defendant in the instant case) physically assault him. In addition, Plaintiff testified that Vance may have delivered one of Plaintiff's misconducts and that Vance had written a misconduct against Plaintiff concerning the incident in which Plaintiff has alleged, in another lawsuit, that Vance physically assaulted him.

(Doc. 50, ¶ 4; Doc. 58, ¶ 4; Doc. 61, ¶¶ 9, 10-13; Doc. 69, ¶¶ 9, 10-13.) This Court granted summary judgment in favor of Vance and all other defendants in Middle District of Pennsylvania Civil No. 1:05-CV-0292 on March 2, 2007.

Mincy presently asserts that defendants retaliated against him as a result of his unfavorable deposition testimony. (Doc. 50, ¶ 4; Doc. 58 ¶ 4; Doc. 61, ¶ 8; Doc. 69, ¶ 8.) Specifically, on January 3, 2006, defendant Wetzel ordered Mincy to be moved from an RHU cell in Building H, Section D, Cell 1005 to an RHU cell in Building H, Section A. (Doc. 50, ¶ 7; Doc. 58, ¶ 7; Doc. 61, ¶¶ 17, 18; Doc. 69, ¶ 17.) There were

3

cells on the same pod that were available for occupancy. (Doc. 50, ¶ 8; Doc. 58, ¶ 8.) For instance, on the same day, inmate Angel Pabon was ordered to be moved to another cell on the same pod. (Doc. 50, ¶ 9; Doc. 58, ¶ 9.)

In accordance with defendant Wetzel's order, defendants Latham, Miknich, and Gilligan told Mincy to pack his belongings so he could be moved; Mincy's inquiries concerning the location of his new cell went unanswered. (Doc. 50, ¶¶ 10-11; Doc. 58, ¶¶ 10-11; Doc. 61, ¶ 19; Doc. 69, ¶ 19.) Upon arrival at the new cell, Mincy's handcuffs were removed and the inmate present in the cell, Maurice Mosely, was handcuffed and removed to allow plaintiff to move his property into the cell. (Doc. 50, ¶ 14; Doc. 58, ¶ 14; Doc. 61, ¶¶ 21-22; Doc. 69, ¶¶ 21-22.) After Mincy's property was placed on the top bunk, Mosely's handcuffs were removed and he was placed back in the cell with Mincy. (Doc. 50, ¶ 15; Doc. 58, ¶ 15; Doc. 61, ¶¶ 23, 24; Doc. 69, ¶¶ 23, 24.) The cell door was closed and defendants Miknich, Gilligan and Latham walked away from the cell. (Doc. 61, ¶ 25.) Thereafter, Mincy and Mosely got into a physical altercation. Mincy contends that Mosely threw the first punch and that defendants witnessed the attack and walked away. (Doc. 50, ¶¶ 16, 17.) He further contends that they returned to watch the attack and laughed at Mincy's predicament. Sometime thereafter, defendants Miknich, Gilligan, Latham and Wetzel entered the cell to subdue Mosely. (Doc. 50, ¶¶ 17, 18, 20.) Conversely, defendants state that after departing from the cell, they heard what sounded like a physical altercation and, upon their return, found Mincy and Mosely engaged in a fight. (Doc. 58, ¶¶ 16-18; Doc. 61, ¶¶ 26-27.) None of them saw who initiated the

4

altercation. (Doc. 61, ¶ 28.) Defendants Miknich, Gilligan, Latham and Wetzel promptly entered the cell to subdue *both* inmates. (Doc. 50, ¶ 20; Doc. 58, ¶ 20; Doc. 61, ¶ 29.) Mincy was handcuffed, taken to the RHU medical triage area, and examined by a nurse and physician's assistant. (Doc. 50, ¶ 21; Doc. 58, ¶ 21; Doc. 61, ¶ 31.) He was then moved to a cell within the RHU traditionally used to separate inmates who had been fighting or engaged in other problematic behavior. (Doc. 50, ¶ 23; Doc. 58, ¶ 23; Doc. 61, ¶ 33; Doc. 69, ¶ 33.) Mosely was returned to the same cell that he had occupied alone. (Doc. 50, ¶ 22; Doc. 58, ¶ 22; Doc. 61, ¶ 32; Doc. 69, ¶ 32.)

The "Inmate Handbook" in effect at the time provided that an inmate could be subject to a misconduct for "Fighting." (Doc. 61, ¶ 44; Doc. 69, ¶ 44.) The handbook contains no self-defense exception. (Doc. 61, ¶¶ 45, 47; Doc. 69, ¶¶ 45, 47.) On January 3, 2006, Mincy and Mosely received misconduct reports charging them with "Fighting" and "Refusing to Obey an Order." (Doc. 50, ¶ 24; Doc. 58, ¶ 24; Doc. 61, ¶¶ 34-35; Doc. 69, ¶ 34-35.) "On January 6, 2006, plaintiff attended his misconduct hearing for the misconduct issued, before Hearing Examiner J. Kevin Kane, . . . a defendant in both civil suits filed by plaintiff; plaintiff submitted a 4 page statement stating that he was 'set-up' by RHU officers to be attacked." (Doc. 50, ¶ 25; Doc. 58, ¶ 25; Doc. 61, ¶¶ 36-37; Doc. 69, ¶¶ 36-37.) Although he pled "not guilty," Mincy admitted that he fought back to protect himself. (Doc. 61, ¶¶ 39-40.) Mincy was found not guilty of refusing to obey an order, but guilty of fighting and sentenced to sixty days of disciplinary time. (Doc. 50, ¶ 26; Doc. 58 ¶ 26; Doc. 61, ¶¶ 38, 41; Doc. 69, ¶¶ 38, 41.) On the same day, at a misconduct hearing before

5

defendant Kane, Mosely pled "guilty" and was given thirty days of disciplinary time. (Doc. 50, ¶ 27; Doc. 58, ¶ 58; Doc. 61, ¶¶ 42-43; Doc. 69, ¶¶ 42-43.) It is undisputed that Mincy received double the disciplinary sanction that Mosely received. (Doc. 50, ¶ 54; Doc. 58, ¶ 54.)

Mincy was never found guilty of a Misconduct Charge for "Fighting" prior to the incident on January 3, 2006. (Doc. 50, ¶ 55; Doc. 58, ¶ 55.) He received a misconduct for "Fighting" on June 20, 2003 (#A440630) for an incident occurring the same day, but a hearing examiner found him not guilty. (Doc. 58, ¶ 55.) He was also issued a misconduct for "Fighting" on June 12, 2003 for an incident occurring on June 12, 2003 (#A47752), but, again, he was found not guilty. (Id.) Mosely received the following misconducts from November 29, 1999, the date on which he was incarcerated, up until the date of the incident at issue:

      a.     Misconduct 0A07050
            Incident date and time: 4/1/2000 at 18:35
            Report date: 4/3/2000
            Charges: "Aggravated Assault" and "Fighting"
            Pleas: No Plea to both charges
            Result: Charges dismissed without prejudice.

      b.     Misconduct 0A07051
            Incident date and time: 4/1/2000 at 18:35
            Report date: 4/6/2000
            Charges: "Assault" and "Fighting"
            Pleas: Not guilty to both charges
            Result: Found guilty of "Assault." "Fighting" charge
            dismissed.

c.  Misconduct A196296
    Incident date and time: 7/20/2000 at 11:00
    Report date: 7/20/2000
    Charge: "Fighting"
    Plea: No Plea
    Result: Charge dismissed without prejudice.

d.  Misconduct A082980
    Incident date and time: 7/20/2000 at 11:00
    Report date: 7/21/2000
    Charge: "Fighting"
    Plea: Guilty
    Result: Found guilty of "Fighting."

e.  Misconduct A264400
    Incident date and time: 11/14/2000 at 8:30
    Report date: 11/14/2000
    Charge: "Fighting"
    Plea: Not Guilty
    Result: Found guilty of "Fighting."

f.  Misconduct A272759
    Incident date and time: 12/22/2001 at 19:45
    Report date: 12/22/2001
    Charge: "Fighting"
    Plea: Guilty
    Result: Found guilty of "Fighting."

g.  Misconduct A477519
    Incident date and time: 3/10/2002 at 11:35
    Report date: 3/10/2002
    Charge: "Fighting"
    Plea: Not Guilty
    Result: Found guilty of "Fighting."

h.  Misconduct A718321
    Incident date and time: 04/19/2005 at 18:50
    Report date: 4/19/2005
    Charge: "Fighting"
    Plea: No Pleas
    Result: Charges dismissed without prejudice.

> i. Misconduct A707627
> Incident date and time: 4/19/2005 at 11:00
> Report date: 4/22/2005
> Charge: "Assault"
> Plea: Guilty
> Result: Found guilty of "Assault."

(Doc. 50, ¶ 57; Doc. 58, ¶ 57.) Misconduct charges and accompanying dispositions are a permanent part of an inmate's DOC record and may affect custody level. (Doc. 50, ¶¶ 58-59; Doc. 58, ¶¶ 58-59.)

Mincy's appeals of the hearing examiner's decision were unsuccessful. (Doc. 50, ¶ 28, 31, 33, 36,40; Doc. 58, ¶¶ 28, 31, 33, 36, 40; Doc. 61, ¶¶ 48-53; Doc. 69, ¶¶ 48-53.) In grievance #140974 and in letters to defendants Klem and Derfler, Mincy alleged that corrections officers had "set him up" to be attacked by Mosely as retaliation for his prior grievances, complaints and deposition testimony. (Doc. 50, misnumbered second ¶ 28, ¶ 30; Doc. 58, ¶¶ 29-30; Doc. 61, ¶ 54; Doc. 69, ¶ 54.) Mincy's grievance was denied at all levels. (Doc. 50, ¶¶ 34, 38, 42-43; Doc. 58, ¶¶ 34, 38, 42-43; Doc. 61, ¶¶ 55-60; Doc. 69, ¶¶ 55-60.) Mincy avers that none of the defendants conducted a meaningful investigation into his allegations of abuse. (Doc. 50, ¶ 49.)

## II. Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the non-moving party to come forth with "affirmative

8

evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.

### A. Defendants Klem, Derfler, Burkers, Kane and Bitner

Defendants Klem, Derfler, Burks, Kane and Bitner seek an entry of summary judgment based on their lack of personal involvement in conduct amounting to a constitutional violation. "A defendant in a civil rights action must have personal

9

involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Thus, individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode, *supra*. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement. See Rode, 845 F.2d at 1208 (mere filing of a grievance is insufficient to impute the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Croom v. Wagner, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corrections, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement); Pressley v. Blaine, No. 01-2468, 2006 U.S. Dist.

10

LEXIS 30151, at *17 (W.D. Pa. May 17, 2006) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern." (citing Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983))). Participation in the misconduct appeal process or disposition of a grievance is insufficient to establish defendants' personal involvement in the alleged underlying First, Eighth and Fourteenth Amendment constitutional violations. Beyond bald assertions, Mincy has failed to adduce sufficient evidence of these defendants personal involvement. Therefore, defendants Klem, Derfler, Burks, Kane and Bitner are entitled to an entry of summary judgment with respect to these claims.

These defendants are also entitled to an entry of judgment with respect to Mincy's allegations that they abused their discretion "with the intentions of aiding and abetting and/or conspiring to conceal and suppress the illegal, inappropriate and retaliatory acts of her co-workers and friends . . . " (Doc. 1, at ¶¶ A, F, J, K, L.) In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area VocationalTechnical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). The Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights, (2) the time and the place of the conduct, and (3) the identity of the officials responsible for the conduct. Oatess v. Sobolevitch, 914 F.2d 428, 432 n.8 (3d Cir. 1990). See also, Colburn v. Upper Darby Twp., 838 F.2d 663 (3d Cir. 1988).

11

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545. A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. See id.; Rose, 871 F.2d at 366. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young, 926 F.2d at 1405 n.16.

Mincy asserts, in conclusory fashion, that defendants' actions in disposing of his misconduct appeal and grievance amounted to a conspiracy to retaliate against him for exercising his First Amendment rights and an agreement to cover-up co-workers' unlawful conduct. The record is devoid of specific facts which tend to show a meeting of the minds and some concerted activity. Mincy relies on subjective suspicions and unsupported speculation, which is insufficient to maintain a conspiracy claim. Therefore, defendants Klem, Derfler, Burks, Kane and Bitner are also entitled to summary judgment on Mincy's civil conspiracy claim.

B.   Defendants Wetzel, Miknich, Latham and Gilligan

Mincy alleges that he was retaliated against for giving deposition testimony in a pending federal court civil action. The First Amendment offers protection for a

wide variety of expressive activities. See U.S. Const. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225). The last Rauser prong requires a prisoner to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. The court employs a burden-shifting regime to determine whether a causal link exists. The prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him. See id. (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity. See id. If defendants prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action. See id. at 334.

The filing of a lawsuit and access to the courts is protected conduct covered by the First Amendment. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); see also Allah, 229 F.3d at 224 (noting that it is well settled that "prisoners have a constitutional right to access to the courts"); Peterkin v. Jeffes, 855 F.2d 1021, 1036 (3d Cir. 1988); Cook v. Boyd, 881 F. Supp. 171, 176, n. 4 (E.D. Pa. 1995). Participation in a deposition clearly constitutes protected conduct.

Once it is determined that the inmate was engaged in protected conduct he must demonstrate that he has suffered some adverse action at the hands of prison officials. See Rauser, 241 F.3d at 333 (citing Allah, 229 F.3d at 225). To show an "adverse action," the plaintiff must demonstrate that defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F. Supp. 2d 520,535 (E.D. Pa. 2002), quoting Allah, 229 F.3d at 225.

The adverse action which Mincy allegedly suffered, the move from one RHU pod and cell to another, is insufficient to constitute adverse action. DC-ADM 6.5.1 provides that each Security Level 5 inmate shall be assigned to a new cell every ninety days. "[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." Rhodes v. Chapman, 452 U.S. 337, 349 n. 14 (1981); see also, Bell v. Wolfish, 441 U.S. 520, 551 (1979) (holding that security concerns involved in the movement and control of prison inmates within an institution are details within the discretion of prison officials.)

14

Even if it were concluded that the movement of his cell constituted adverse action, Mincy's claim would still fail because he cannot establish that there is a causal connection between the exercise of the constitutional right and the adverse action. The plaintiff must show that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. This "motivation" factor may be established by alleging a chronology of events from which retaliation plausibly may be inferred. Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Goff v. Burton, 91 F.3d 1188 (8th Cir. 1996); Pride v. Peters, 72 F.3d 132 (Table) (7th Cir. 1995). It is plaintiff's burden to prove that defendants were motivated by retaliation. Hannon v. Speck, No. 87-3212, 1988 WL 131367, at *4 (E.D. Pa. Dec. 6, 1988) ("In bringing a § 1983 action alleging such retaliation, an inmate faces a substantial burden in attempting to prove that the actual motivating factor . . . was as he alleged.") (internal quotes and citation omitted), aff'd, 888 F.2d 1380 (3d Cir. 1989) (Table). Where the prisoner seeks to establish this causal link based upon the temporal proximity between the protected conduct and the alleged retaliatory act, "the timing of the alleged retaliatory action must be unusually suggestive before a causal link will be inferred." Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997); Rauser, 241 F.3d at 334; see also Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (concluding that the temporal proximity, nearly six months, is not unduly suggestive and does not sufficiently establish any causal link).

Mincy's claim hinges on the assumption that corrections officers present at the December 30, 2005 deposition, informed defendant Wetzel of unfavorable deposition testimony. Specifically, he argues in his brief that "when RHU-Lt-William C. Wetzel returned to work on January 3, 2006 (having learned of plaintiff's testimony against him), he directed RHU-Officers Micknich, Latham, and Gilligan to order the plaintiff to be moved . . . where plaintiff was immediately attacked by another inmate." (Doc. 53, at 4.) There is nothing in the record that establishes that the corrections officers at the deposition informed Wetzel of unfavorable testimony. More importantly, Mincy fails to establish that Wetzel had any knowledge of either the deposition or the substance of the testimony and that his actions were a result of that knowledge. Consequently, Mincy fails to establish that the alleged protected conduct was a substantial motivating factor in his transfer within the RHU. Further, it is clear from the record that Mincy was moved pursuant to DC-ADM 6.5.1, and not as the result of some retaliatory motive. See Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002) (finding viable retaliation claim not stated where preponderance of the evidence shows that defendants would have taken the same action for reasons reasonably related to penological interest). Defendants are entitled to an entry of summary judgment on the retaliation claim.

C.  State Law Claims

Also included in the complaint are unspecified state law claims against defendants in their individual capacities. The court declines to exercise supplemental jurisdiction over the pendent state law claims. 28 U.S.C. § 1367(c)(3). They will be dismissed without prejudice to any right Mincy may have to pursue them in state court. In so holding, the court expresses no opinion as to the merits of any such claims.

**IV. Conclusion**

Based on the foregoing, plaintiff's motion for summary judgment (Doc. 49) will be denied and defendants' motion for summary judgment (Doc. 54) will be granted.

An appropriate order will issue.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: March 8, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HILTON KARRIEM MINCY, | : CIVIL ACTION NO. 1:08-CV-0066 |
| Plaintiff | : (Judge Conner) |
| v. | : |
| SUPERINTENDENT EDWARD KLEM, et al., | : |
| Defendants | : |

## ORDER

AND NOW, this 8th day of March, 2011, upon consideration of the cross motions for summary judgment (Docs. 49, 54), and for the reasons set forth in the foregoing memorandum, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 49) is DENIED.

2. Defendants' motion for summary judgment (Doc. 54) is GRANTED and the Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff.

3. The Clerk of Court is further directed to CLOSE this case.

4. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

                S/ Christopher C. Conner
                CHRISTOPHER C. CONNER
                United States District Judge